UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NUMBER 5:25-cv-20-CRS-LLK

FELICIA B.[1]                                                                                                    PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security                                                                  DEFENDANT

## REPORT AND RECOMMENDATION

On February 17, 2025, Plaintiff filed a Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g) of the Final Decision of the Commissioner denying her claim for Disability and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act. [DN 1]. Plaintiff's Brief is at DN 11, the Commissioner's responsive Fact and Law Summary is at DN 18, and the Plaintiff's Reply Brief is at DN 19. Pursuant to General Order 23-02 and 28 U.S.C. § 636(b)(1)(B), the District Court referred this matter to the United States Magistrate Judge for preparation of a Report and Recommendation.

After examining the administrative record, the arguments of the parties, and the applicable authorities, the undersigned is of the opinion that the Administrative Law Judge's (ALJ's) Decision is supported by substantial evidence and comports with applicable law. Accordingly, the undersigned recommends that the District Court AFFIRM the Commissioner's Final Decision and DISMISS Plaintiff's Complaint.

**Administrative History**. Plaintiff filed applications for DIB and SSI on May 12, 2022,[2] alleging disability from August 1, 2020, at age 49 from "congestive heart failure, sleep apnea with

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter is shortened to first name and last initial.
[2] The record reflects that Plaintiff previously filed for DIB and SSI benefits in October of 2011, and those claims were denied in an ALJ Decision on July 3, 1013. [DN 10] at 84.

oxygen, obesity, bilateral knee pain, arthritis, problems with left shoulder, hypertension, acid reflux, and TIA." [DN 10] at 106. Her claim was denied initially and upon reconsideration. Plaintiff requested a hearing before an ALJ which was granted. Following some technical difficulties with her scheduled online video hearing, Plaintiff agreed to appear by telephone. [DN 10] at 15. Plaintiff's attorney was Devon Michael Brady, but Mr. Brady's associate Rafi Issagholian represented Plaintiff at the hearing. The hearing was conducted by Administrative Law Judge David Peeples of the Paducah, Kentucky Office of Hearings Operations. Also attending and testifying during the hearing was impartial vocational expert William Harpool. On December 6, 2023, the ALJ issued an unfavorable Decision finding that Plaintiff was not disabled. [DN 10] at 15-30.

**The ALJ's Decision**. The ALJ's Decision denying Plaintiff's claims for DIB and SSI benefits was based upon the five-step sequential evaluation process applicable in all Social Security disability cases. At the first step, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).[3] At the second step, the ALJ determined that Plaintiff has the following severe impairments: congestive heart failure, obesity, osteoarthritis of the bilateral knees, and left shoulder arthroscopic revision rotator cuff repair with residual pain (20 CFR 404.1520(c) and 416.920(c)). At the third step, the ALJ concluded that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[3] The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2025.

2

As in any case that proceeds beyond step three, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). In making an RFC determination, the ALJ considers the record in its entirety including medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). The ALJ found that, notwithstanding her impairments, the ALJ found that Plaintiff retains the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit for six hours in an eight-hour workday. She can stand and/or walk for four hours in an eight-hour workday. She requires occasional use of a cane for ambulation. She can push/pull same as lift/carry. She can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. She can frequently balance. She can occasionally stoop, kneel, and crouch. She can never crawl. She can occasionally reach overhead with the left upper extremity. She should avoid concentrated exposure to noise at an intensity level 3 (moderate) or greater as described in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, 1992, Appendix D Environmental Conditions (examples of which are: department store, grocery store, light traffic, and fast food restaurant at off-hours). She should avoid all exposure to hazards (unprotected heights, moving mechanical parts).

Decision, DN 10 at 21.

At the fourth step, the ALJ found that Plaintiff is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965). The ALJ made additional findings including that the claimant was born on November 14, 1970, and was 49 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963). In addition, the ALJ found that claimant has a limited education (20 CFR 404.1564 and 416.964) and that she acquired work skills from past relevant work (20 CFR 404.156 and 416.968).

At step five, the ALJ found that considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a, 404.1568(d), 416.969, 416.969a, and 416.968(d)). Accordingly, the ALJ found that claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2020, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

**Standard of Review**. The task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). In reviewing the record as a whole, the Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*. The Court may look to any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of

whether it has actually been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir 2001).

**Step Five Determinations**. When an ALJ determines that a claimant lacks the RFC to perform past relevant work, the burden shifts to the Commissioner at step five to show that the claimant retains the ability to perform other substantial gainful activity that exists in significant numbers in the national economy.[4] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). While the claimant continues to have the burden of proving disability at step five, the burden of going forward with the evidence shifts to the Commissioner. 20 C.F.R. §§ 1520(g); 416.920(g). To meet this burden, there must be "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987). In other words, the Commissioner must demonstrate that a significant number of jobs exist in the national economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g); 416.920(a)(4)(v) and (g).

In order to meet this burden, the ALJ may rely upon the testimony of a VE at Step Five. Routinely, an ALJ elicits expert vocational testimony during the Social Security hearing to determine what jobs exist in significant numbers in the national economy which plaintiff can perform considering the combination of his/her limitations. *See Born v. Sec'y of Health & Hum. Servs.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Floyd v. Comm'r of Soc. Sec.*, No. 23-2036, 2024 WL 3103757 at *3-4, (6th Cir. June 24, 2024). "All that is required before an ALJ can rely on vocational evidence provided by a vocational expert is that the ALJ either ensure that the evidence does not

---

[4] Age is presumed not to affect the ability to adapt to new work situations for people under age 50. (20 C.F.R. §§ 404.1563(c); 416.963(c)). However, for persons "approaching advanced age" (50-54), the regulations recognize that age, in conjunction with a severe impairment and limited work experience, may seriously affect their ability to adjust to significant numbers of jobs in the economy. (20 C.F.R. §§ 404.1563(d); 416.963(d)).

conflict with the information in the DOT or obtain a reasonable explanation for any conflict." *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020).

The ALJ must then assess whether the claimant has transferable skills pursuant to 20 C.F.R. §§ 404.1568(d)(1)-(3); 416.968(d)(1)-(3). Typically, the ALJ elicits vocational expert testimony to determine whether the claimant has transferable skills pursuant to 20 C.F.R. §§ 404.1568(d); 416.968(d); Social Security Ruling 82-41. The claimant is considered to have transferable skills when skilled or semi-skilled work activities the claimant did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. 20 C.F.R. §§ 404.1568(d)(1); 416.968(d)(1); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855-56 (6th Cir. 2010). The Commissioner has the burden to demonstrate that a plaintiff has transferable skills. *Preslar v. Sec'y of Health & Hum. Servs.,* 14 F.3d 1107, (6th Cir. 1994). "The vocational expert will generally also testify as to claimant's transferable skills and the ALJ may rely on this testimony in making their step five finding." *Debra K. v. Bisignano*, No. 1:25cv24-HBB, 2025 WL 2588520 at *4, (W.D. Ky. Sept. 5, 2025), (citing *Barnett v. Comm'r of Soc. Sec.*, No. 22-12263, 2024 WL 245531 at *2-3, (E.D. Mich. Jan. 23, 2024)).

**Arguments of the Parties**. Plaintiff raises two arguments on appeal. She claims that the ALJ committed legal error in finding her to have acquired transferable skills that could be utilized in other work, as the capabilities identified fail to satisfy the legal definition of transferable skills. [DN 11] at 2. Second, Plaintiff avers that the ALJ committed legal error in failing to develop the record and, as a result, his dispositive step five findings depend upon skills she learned from her past work as a retail store manager (work that she posits did not qualify as past relevant work). [DN 11] at 8. The Commissioner contends that the ALJ properly relied upon vocational expert testimony regarding Plaintiff's transferrable skills from her past work as a retail manager (which,

as self-reported by Plaintiff, was performed for a sufficient duration so as to qualify as past relevant work). For the reasons explained below, the Court agrees with the Commissioner.

**Relevant Hearing Testimony**. At Plaintiff's telephonic Hearing, she offered testimony regarding her past relevant work. Plaintiff described her duties as store manager of Dollar Tree to include hiring/firing of employees, scheduling personnel, ordering, stocking, unloading trucks, cashiering, and payroll responsibilities. [DN 10] at 60-62. Vocational Expert William Harpool (VE) also offered testimony and Plaintiff's counsel stipulated to his qualifications. [DN 10] at 71. The ALJ noted that Plaintiff's past relevant work includes work at Walmart as a retail store cashier/checker. [DN 10] at 60, 62. The VE focused on Plaintiff's more recent retail work, and identified her past relevant work at Dollar Tree as composite jobs consisting of retail store cashier/checker (SVP of 3, semi-skilled, light work as described), retail store stocker (SVP of 4, semi-skilled, medium work as described), and retail store manager (SVP of 7, skilled, medium work as described). [DN 10] at 62, 71-72.

The vocational expert testified that a hypothetical person with Plaintiff's vocational profile and RFC (limited to a range of light work with standing/walking four hours in an eight-hour workday plus additional limitations) would not be able to perform Plaintiff's past relevant work. [DN 10] at 72-73. However, the VE identified other work in the national economy that could be performed within those parameters, including light, unskilled jobs with sit/stand option including inspecting, bench assembly, and hand work/packing jobs. *Id*. Next, the ALJ added the use of a cane for ambulation to the first vocational hypothetical. The VE indicated those same light, unskilled jobs with sit/stand option would still be available, and that the cane for ambulation generally would not affect the availability of the previously-identified sedentary jobs. [Hearing, DN 10] at 74-75. In the third hypothetical to the VE, the ALJ used all parameters from the second hypothetical

7

except he lowered the lift/carry from 20 to 10 pounds occasionally, less than 10 pounds frequently. The VE testified that lowering the lift/carry limits would eliminate the light or "high" jobs, leaving only the sedentary jobs (Payroll Clerk, Personnel Scheduler, and Telephone Order Clerk). [Hearing, DN 10] at 75-76.

> In addition, the VE testified that Plaintiff had acquired skills from her past relevant work:
>
> ALJ: Let me ask you also, would there be any transferable skills from any of those past jobs?
>
> VE: There would be transferable skills from a management position to some sedentary jobs, communication, organization, adaptability, customer service skills, tracking orders, problem solving, those types of things. Examples of jobs – **some of the jobs, there are aspects of the job she actually performs such as Payroll Clerk, Personnel Scheduler, Telephone Order Clerk**.

[Hearing, DN 10] at 73-74. (Emphasis added.)

The VE identified several sedentary, semi-skilled jobs to which her transferable skills from the previous management position would transfer, including payroll clerk, personnel scheduler, and telephone order clerk.[5] [DN 10] at 74, 76. The VE testified that his testimony was consistent with the DOT, and based upon his training and education, experience, feedback from employers, noting any areas in which his opinions varied from the DOT. [DN 10] at 78-79. When given a final opportunity to cross-examine the VE, Plaintiff's counsel declined. [DN 10] at 80.

**ALJ's Step Five Denial**. Unambiguously relying upon the VE's testimony, the ALJ's Decision concluded that considering the claimant's age, education, work experience, and residual

---

[5] The VE identified three sedentary, semi-skilled jobs to which Plaintiff's skills would transfer to include payroll clerk (DOT No. 215.382-014, sedentary, semi-skilled with SVP 4) with approximately 25,000 jobs nationally; personnel scheduler (DOT 215.367-014, sedentary, semi-skilled with SVP 4) with approximately 10-15,000 jobs nationally; and telephone order clerk (DOT 249.362-026, sedentary, semi-skilled (SVP 4) with approximately 55,000 to 60,000 jobs nationally. [DN 10] at 76; [ALJ's Decision, DN 10] at 29.

functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy:

> **9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).**
>
> The vocational expert testified that the claimant's past relevant work of retail manager was skilled with a specific vocational preparation (SVP) code of 7 and required the following skills: communication, organization, adaptability, customer service, tracking orders, and problem solving.

[ALJ's Decision, DN 10] at 28-29.

Relying upon the VE's testimony, the ALJ further addressed Plaintiff's transferable skills to other jobs as follows:

> The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but not additional skills. The vocational expert responded and testified that representative occupations such an individual could perform include: payroll clerk, DOT 215.382-014, sedentary in exertion, semi-skilled (SVP 4), with approximately 25,000 jobs nationally; personnel scheduler, DOT 215.367-014, sedentary in exertion, semi-skilled (SVP 4), approximately 10,000-15,000 jobs nationally; and telephone order clerk, DOT 249.362-026, sedentary in exertion, semi-skilled (SVP 4), approximately 55,000 to 60,000 jobs nationally.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the DOT, as supplemented by the expert's education, training, and experience with regard to the availability of jobs that can be performed despite limitations not necessarily contemplated by the DOT. For example, the DOT does not discuss the use of a cane. The DOT does not differentiate in reaching overhead versus reaching in all other directions. The vocational expert testified that his testimony was based on his experience and training. The undersigned accepts the testimony of the vocational expert that these jobs can be performed within the residual functional capacity. Additionally, the vocational expert testified that the jobs identified are being performed in the modern economy as they are described in the DOT.

[ALJ Decision, DN 10] at 29.

**Plaintiff's first argument is unpersuasive**. Plaintiff first argues that the ALJ erred in relying upon the transferable skills identified by the VE, as they are "basic tasks" that do not rise to the level of a skill as defined by the regulations and are not sufficiently specialized to qualify as transferable. [DN 11] at 5-7. Plaintiff's argument faults the ALJ for relying upon the VE's testimony that Plaintiff would have acquired "transferable skills" from her past work as a retail store manager to the jobs of personnel scheduler, payroll clerk, and telephone order clerk. She posits that the skills identified by the VE are basic tasks not rising to the level of a "skill" as defined in the regulations, and thus, they cannot be the basis of a skill-transferability finding. [DN 11] at 5. Citing SSR 82-41, she urges that Agency policy indicates that "a skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties" and that the VE identified only general abilities that "are not the readily transferable skills contemplated by the regulations." [DN 11] at 6. She further posits that the skills identified were not sufficiently specialized to qualify as transferable so as to meet the Agency's policy in SSR 82-41 that explains a "skill gives a person a special advantage over unskilled workers in the labor market." *Id*.

These arguments are unpersuasive for several reasons. Most notably, the VE testified that the three sedentary jobs that he identified (Payroll Clerk, Personnel Scheduler, Telephone Order Clerk) were aspects of Plaintiff's management duties from her previous job at Dollar Tree. Plaintiff indicated at the Hearing that as store manager, she handled the hiring, firing, scheduling, ordering, and payroll responsibilities. [DN 10] at 62-63. The VE identified sedentary, semi-skilled jobs that aligned exactly with the components of Plaintiff's prior management job duties and that included payroll, scheduling, and ordering. Those skills would be transferable with little if any vocational

10

adjustment on Plaintiff's part, as the VE testified that they were jobs she actually performed as part of her store manager duties. [DN 73-74].

Whether characterized as "simple job duties," "abilities," or "skills," transferability "means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." SSR 82-41 at *2. Transferability is most common among jobs in which "(i) [t]he same or a lesser degree of skill is required; (ii) [t]he same or similar tools and machines are used; and (iii) [t]he same or similar raw materials, products, processes, or services are involved." 20 C.F.R. §§ 404.1568(d)(2); 416.968(d)(2). However, similarity across all of these factors is not required for transferability. 20 C.F.R. §§ 404.1568(d)(3); 416.968(d)(3).[6] The VE is distinctly qualified to determine what job "skills" are, and whether they are transferable to other jobs. Plaintiff's attempt to minimize the transferable skills identified by the VE as not rising to the level of skills (but instead represent simple job duties or abilities) as described in SSR 82-41 is unpersuasive. The Sixth Circuit has previously addressed a similar "not rising to the level of skill" argument, and found that greeting people, giving information, and answering phones are transferrable skills. *Harris v. Comm'r of Soc. Sec*., 598 Fed. Appx. 355, 362 (6th Cir. 2015). A survey of authorities in *Harris* served to undermine the argument in that case and in the present case: courts have found transferable skills in clerical duties, filing, answering the phone, providing information to callers, "the learned skill of interacting with people," public contact, and a waitress' ability to handle money, deal with the public, and record routine information. *Id*. at 363.

---

[6] As aptly noted by the Commissioner, SSR 82-41 provides that "[e]ven though semiskilled occupations require more than 30 days to learn, the content of work activities in some semiskilled jobs may be little more than unskilled." SSR 82-41, par. 2(d.) 1982 WL 31389.

Another court in this circuit has explained that "[t]he Commissioner's conclusion of transferable skills need only include three findings: (1) identification of the acquired work skills; (2) occupations to which these skills are transferable; and (3) evidence that these occupations exist in significant numbers in the national economy." Clark v. Colvin, No. 3:16-cv-01340, 2017 WL 169103 (M.D. Tenn. Jan. 17, 2017) (citing SSR 82-41, 1982 WL 31389, at *7). Here, the VE made all three findings when he identified the acquired skills, identified the occupations to which those skills transfer, and provided evidence that those jobs exist in significant numbers—even after taking into account the limitations expressed in the ALJ's third hypothetical. Plaintiff's contentions that Ms. Bush did not perform any of the transferable skills the VE testified to and the ALJ relied upon directly contradicts her own hearing testimony and the self-reported information contained in the Work History Report. [DN 10] at 293.

It is also noteworthy that the VE in this case identified three light, unskilled jobs which were not precluded by Plaintiff's RFC, in addition to identifying that she has transferable skills to three, semi-skilled sedentary jobs that Plaintiff can still do. Plaintiff's counsel had the opportunity to cross-examine the VE to challenge his transferable skills findings and the DOT job descriptions for the jobs the VE identified, but did not do so. The Sixth Circuit has signaled that the failure to cross-examine the [vocational expert] on later-contested issues "severely undermines [a claimant's] request for relief." *Harris,* 598 Fed. App'x 355, 361, n.9. More importantly, the Court cannot simply override the unequivocal testimony of a highly trained vocational expert based exclusively upon Plaintiff's assertion that the transferable skills the VE identified are actually just "job duties." "Just as the ALJ is not permitted to substitute her judgment for that of medical experts, she may not substitute her judgment for that of vocational experts." *Carter v. Heckler*, 1987 WL 4790 at *7 (E.D. Pa. Mar. 2, 1987).

12

Finally, any error was, at worst, harmless because the VE testified that even without the transferability of skills issue, Plaintiff would still be able to perform light, unskilled jobs that exist in significant numbers in the national economy such as inspecting, bench assembly, and hand working/hand packing. [Hearing, DN 10] at 73. *See Kornecky v. Comm'r*, 167 F. App'x 496, 507 (6th Cir. 2006) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.").

**Plaintiff's second argument is unpersuasive**. Plaintiff contends that the ALJ failed to develop the record in determining her past relevant work. She claims that the record does not support that she performed her work as store manager at Dollar Tree long enough to learn the job, thus it should not constitute past relevant work. It should be noted that it is the claimant who "is the primary source for vocational documentation." SSR 82-62. Past relevant work is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1); 416.960(b)(1).

Plaintiff provided Job History information in her Disability Report, Form SSA-3368 indicating that she was a retail manager from July 2013 to July 2020. [DN 10] at 281-282. She testified at the Hearing that she had worked at Dollar Tree since 2014:

> ALJ: 2014 up until 2020, earnings are above, above SGA-level earnings. So, tell me what you did at Dollar Tree.
>
> A: I was a cashier. I stocked, unload trucks. I was the, the manager. Did a little office work, but mostly I did cashier – unload the trucks, and cashier.
>
> ALJ: Okay. Did you do all of those jobs kind of concurrently or did you move from one of those jobs and advance into another position, like the manager job? Is that –
>
> A: I, I started the cashier and then moved to the manager position.

13

[Hearing, DN 10] at 60.

The ALJ was under no duty to further develop the record regarding Plaintiff's past relevant work. As aptly pointed out by the Commissioner, "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62. Plaintiff was represented by counsel at the Hearing. The ALJ offered several opportunities in which counsel could have elicited either additional vocational details from his client regarding her retail management job or examined the VE further on the past relevant work and transferable skills issues. He did not. That fact notwithstanding, there was sufficient evidence of record on which both the ALJ and VE could conclude Plaintiff's work as a retail manager at Dollar Tree qualified as past relevant work which was performed for a sufficient period of time in which she could learn the job.

**Conclusion**. The ALJ's reliance upon the vocational evidence and his finding that Plaintiff acquired transferable skills from past relevant work are supported by substantial evidence and comport with applicable law. His findings that Plaintiff acquired skills that were transferable to other occupations during the relevant period and to jobs existing in significant numbers in the national economy support the conclusion that Plaintiff was not disabled at any time between the alleged onset date of August 1, 2020, through the date of his Decision on December 6, 2023.

## RECOMMENDATION

Because Plaintiff's arguments are unpersuasive and the ALJ's Decision is supported by substantial evidence and comports with applicable law, the Magistrate Judge RECOMMENDS that the Court AFFIRM the Commissioner's final Decision and DISMISS Plaintiff's Complaint.

<u>NOTICE</u>

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).

February 12, 2026

**Lanny King, Magistrate Judge**
**United States District Court**